I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have four interesting cases, a lot of good lawyers, and some visiting law students from William & Mary. We particularly want to welcome those students. That said, the first case is United States v. Olson, Mr. Byrne. Good to have you with us, sir. Thank you, Your Honor. Good to be back. May it please the Court, my name is Jonathan Byrne. I'm here on behalf of Timothy Scott Olson, who is the defendant below in this case. This case arises from two counts regarding child pornography to which Mr. Olson pleaded guilty to. His original appellate counsel filed an Anders brief, and this court ordered some supplemental briefing on additional issues. I am going to focus this morning on the... You're the third set of lawyers, aren't you? I'm the second set of appellate lawyers, at least, and there were, I believe, two lawyers in the district court as well. There was an Anders brief, and then appellate lawyers, and then you all. Yes, that's correct, Your Honor. You're the public offender in West Virginia. Assistant, yes, Your Honor. Good to have you with us, sir. Good to be here. So I'm going to focus on that third issue, which is the one that I briefed specifically, but obviously the other two issues that the court raised, I'm happy to answer any questions about those. So the issue in the second supplemental brief was the substantive reasonableness of any of the conditions of supervised release that were imposed as part of Mr. Olson's sentence. He was sentenced to 120 months in prison, followed by a 30-year term of supervised release, and the district court imposed 43 conditions of supervised release as part of that term. All but six of them are special conditions of supervised release that require some specific basis in the record before they can be imposed, and we have challenged six of those. And what is the standard of review? It's plain error. It's plain error for all these issues because none of them were objected to in the district court. And what's your best argument to get beyond plain error review on these conditions? The best argument on the conditions is that, first of all, this court's held in McMillar and in Ross that the failure to explain the basis for special conditions of supervised release is plain error that is prejudicial and requires reversal. And so I think if we have conditions that do not even have a basis in the record, that are inconsistent with the guidelines, and that are a greater deprivation of liberty than necessary, that would have to meet the same standard. In addition, I think if you look at the conditions on an individual condition basis, because five of the six that we challenged fail on all three grounds, and the other fails on two grounds. And I think in that instance, those errors are plain, they're prejudicial because they clearly burden Mr. Olson's liberties more than necessary, and there are errors because of that that should be noticed by this court. So as I mentioned, five of the six conditions do not even have any basis in the record that would justify their imposition in the first place. It doesn't matter at all that it was appellant actually wanted supervised release in this instance, and he got what he wanted. Does that matter at all to your argument? Well, Your Honor, the expert reports on which he relied at sentencing certainly suggested that supervision is appropriate, and there's no objection at this point to him being supervised. And indeed, there are 30-some conditions that we wouldn't make any argument about. It's these particular ones that don't meet the necessary standard for imposition of special conditions. That's the six you're talking about? Yes, Your Honor. So for example, there is the condition, it's standard condition A, although I object to them being labeled as standard, that Mr. Olson has no communication with any person engaged in criminal activity or who is a felon. But first of all, there's nothing in the record that suggests that Mr. Olson's criminal conduct or any of his history has anything to do with He was distributing child pornography to other people, and the people that received the child pornography, wasn't he sharing, well, he was sharing child pornography on peer-to-peer sites, right? So he was having involvement with other offenders. One of the counsel convictions was for transportation based on the peer-to-peer, but it was not a situation where he was specifically, I don't think he was specifically providing it to specific people. He was making it available as part of the peer-to-peer network. To just anybody who wants child pornography. Right. And necessarily anybody who wants child pornography is an offender, whether they've been convicted or not. Well, and that's true, Your Honor. But I think this isn't a situation where he was involved with a particular group. He was not like brought into this by someone else. The case that the government relied on, their brief lenny, which is unpublished, is a situation where the defendant was basically part of a burglary gang. And so he had co-defendants. They egged on and encouraged each other. There's nothing like that here. Because his co-defendant, because the other people on the other end of the peer-to-peer file sharing haven't been apprehended or convicted. That's the only difference. It's still criminal conduct. It is criminal conduct, Your Honor. Maybe another condition. Do you want to talk about another condition? I can, Your Honor. The standard conditions, 13 to 14. These in order of where you think the best ones are? Your best arguments for these six? I was just going to tick through the conditions themselves. Why don't you put them in order if you can. Start out with your very best one. All right. Well, I'll move on to, they happen to be the next in the lineup. That's standard conditions 13 and 14, which involve alcohol and drug use. And this is one of those situations where there is absolutely nothing in the record. I thought the defendant's expert report supported this. Didn't his own expert say that sobriety would assist desistance from sexual reoffending and contribute to a lower likelihood of recidivism? And he defined that sobriety as no excessive use of alcohol. That's true, Your Honor, except that there's nothing in the record to suggest that Mr. Holton ever used alcohol or drugs in the first place. But his own expert said if you want to ensure, increase the likelihood that he doesn't reoffend, you should make sure he doesn't have any excessive use of alcohol or drugs. I would draw the distinction between the observation that sobriety is helpful to avoid recidivism to whether there needs to be a specific condition of supervised release that potentially, if violated, could lead to reincarceration on that ground, based on the record as it is now. We have to know that there has to have been a problem with excessive use of alcohol before the court can say no excessive use of alcohol in the future. That's the guideline recommendation, is that this only applies in situations... That's not the ceiling, is it, for all cases? It's not, but of course the special condition has to be consistent with the guidelines. And I think in that situation, certainly if once Mr. Olson is on supervised release, if there is some sort of an issue with that, the probation officer can seek a modification based on actual need. But the record as it exists right now, there is no actual need for that condition, keeping in mind that sobriety is a positive when it comes to avoiding recidivism. The other two conditions I think we have the strongest argument about, partly because neither one of them correspond to anything that the guidelines recommend, also because they don't have any basis in the record, are the two conditions we challenge that are labeled as sex offender conditions. One is about no loitering within 100 feet, not only of places where children are likely to be, but where children could be, which could be anywhere. And the other is this condition to prohibit Mr. Olson's possession of what are called children's items, which includes toys and games and things like that. Again, there's nothing in the record that says he used anything like that to lure any children into illicit behavior, to try and do that. There's no evidence. The goal of the conditions, and as supported I think by his own experts, as Judge Rushing said, is to make sure he doesn't offend again. And it may be a contact offense next time. Well, there's no indication in the record that that is more possible than certainly the mine run of child pornography offenders. What was his job when he was looking at 100 videos of prepubescent minors engaged in sexually explicit conduct? He was a teacher of some form. What age group? Minors. Elementary. I don't remember specifically the age group. So I would suggest that there is something in the record that would ‑‑ What grade did he teach? I don't remember specifically, Your Honor. It was grade school, but I don't remember specifically the grade. But even with that being said, there's nothing in the record to suggest even with his proximity to children that he ever did or tried to do anything in the district court at sentencing, specifically ask the government, is there any evidence of contact or potential contact offenses here? And the government admitted that there wasn't. Well, again, to go back to the expert reports, I thought the predicted recidivism rate was the same, both for noncontact and contact sexual offenses. But it's also, Your Honor, very low. Right. And they also sought out roles that result in high access to children. Right?  That is part of the record, yes, Your Honor. But that gets back to sort of the specifics of these conditions. The sex offender condition eight doesn't prohibit him from just being around the places where children specifically may congregate or he have access to. It's where they may be, period, end of statement. And children can be anywhere. And the condition on toys and games, we put this in our brief, in the modern world, toys are collectibles. Games are something that people of all ages play. And so to simply say these things are off limits to you without any evidence that they played any role in your offense or your history or conditions and are not something that are recommended by the guidelines, I think becomes an abuse of discretion, which then leads to plenary. He can ask his probation officer for permission, right? Doesn't the condition include prior approval of the probation officer? So if he wants to play a game at home that, you know, is for adults, he can ask his probation officer? He can, Your Honor. Yes, that's true. I see my time is about up, so I will reserve anything else for rebuttal. Thank you. Thank you, Mr. Byrne. Mr. Enright. Thank you, Your Honor. May it please the Court. Anthony Enright for the United States. The district court did not plainly err by accepting Olson's guilty plea or by imposing the downward variant sentence that he requested. I, too, will focus on the conditions of supervised release, though I'm happy to answer any questions about any of the issues this court may have. The conditions are substantively reasonable. This court has emphasized the broad latitude district courts have in fashioning conditions of supervised release, and each one of these meets all the statutory requirements as the district court found. Condition eight. Well, the conditions on the not being anywhere where children congregate and not having toys, those sound pretty broad. They are broad, Your Honor. I would emphasize that his experts looked at the pre-sentence report, which the defendant concedes put on notice about the conditions that the court was contemplating, and what they said was, yeah, you know what? And as I think Judge Rushing noted, they put his risk of recidivism for a hands-on offense at the same level as for a non-contact offense. And it is low, but one of the reasons it's low is because of the long-term community supervision. Because of all the conditions. Right. And there's no objection to it. And I think the flip side is true. Both of these things impose only a rather mild restriction on the defendant's liberty. Yes, some people, adults, like to play games. It's a reasonable caution to say, hey, you have to ask your court's permission. You have to ask your probation officer's permission before you play games. It's a caution, and it's an appropriate one for someone who's exploited children. What about opposing counsel's argument that based on the condition that he not be anywhere where children might be, that that could be literally anywhere, like the grocery store? Well, it's not quite that broad. It shall not loiter. Loiter means linger idly about the place. If he's at the grocery store to buy groceries, he'd have a pretty strong defense to the idea of loitering. If he's working there, he'd have a pretty strong defense to his loitering. If he's at an amusement park or an arcade and someone asks him, what are you doing here? He's like, oh, just sitting here. That's the kind of thing that caution is appropriate for. And, yes, it's broad. But it also allows him to ask his probation officer's permission. Same thing he has to do to leave the jurisdiction. Same thing he has to do to live at a particular place. And if he needs to go to some place and there's a question about whether it's loitering and there's a question about whether it's a place children congregate, he can get that. And I think it is important to note that this, you know, especially under these circumstances where he hired these experts to endorse the use of supervision over incarceration, he looked at this and, you know, saw no problem with it. So he got what he asked for. He got what he asked for. And what he asked for comes with these conditions in order to make sure he doesn't reoffend, correct? Yes, Your Honor. But what about the ‑‑ is there any indication that he has had any drug use or excessive alcohol use in his past? No, Your Honor. But the point that the experts made was that that is one of the protective factors that keeps his recidivism risk low. And so I think it's entirely appropriate for the court to say, okay, then you're not going to use excessive alcohol while you're on supervision. While you're actively serving your criminal sentence, don't take up drinking for the first time. I mean, I think it's important to note these conditions really don't come into play unless he significantly modifies his behavior. And I want to mention something else in that expert report they said. They said that Olson has a tendency to binge on unhealthy behaviors, to self-medicate a prior trauma. So I think the court is acting very appropriately in saying, look, and it's not even you can't drink. It's don't drink excessively. There's a background principle for conditions of supervised release that you can't inadvertently violate them. So this is a situation where you would have to know that he's drinking too much, that he's taken up drinking and it's excessive for it to be a violation. What the condition, especially with the treatment condition, allows the probation officer to do is to say, look, you didn't have this problem before, but you've got a problem. What I want to do is send you to treatment before we take it to the district court. That's why the treatment condition is in there and why it's triggered by the probation officer's discretion. And I think that's all an appropriate caution. And it doesn't affect him really at all unless he decides to take up drinking while he's serving his active sentence for child exploitation. And if he chooses to do that, these are very much the appropriate cautions to have. And all of that is under the umbrella of the plain error standard. There are no cases holding that these conditions are substantively unreasonable in this circuit, let alone under circumstances like this where there's a real justification and a real need for caution in each one. Can I ask you about the plain error standard? Certainly. Assume hypothetically that one of these was an error and that it was plain. First two prongs. Yeah, assume the first two prongs. Would that ever not affect substantial rights if a supervised release condition is imposed erroneously, plainly erroneously, that's prohibiting someone from doing something while they're on supervision and says if you violate that condition, you can be sent back to prison. How would that not violate substantial rights? I think this type of a case might illustrate where that would occur because in this case he relied on the need for supervision to seek and obtain a lower prison sentence. And so I think it's very fair to say that if the court thought that it didn't have this full toolkit of conditions of supervised release, it might well have imposed a higher prison sentence. And what you need to show when you talk about an effect on your substantial rights, there's several decisions on this and I'm sorry I didn't think I cited one, but you have to show that the outcome would be more favorable. That's Laffler and Frye from the Supreme Court, but there's a finer point. Arguably the more favorable outcome for him would be you just don't have these conditions. Right, but that's not, I don't think how it would have played out had he said, Your Honor, he needs to have a much less robust supervised release regime than we're proposing. He needs to have these conditions stricken. The court might well have done that and said, Okay, but I'm going to give you the guideline sentence, the sentence the guidelines called for, which was about 31 months higher in prison. And I don't think you could say that that would be a more favorable sentence. And quite honestly, I think an easier way to resolve it would be on the fourth prong of the plain error standard in a case like this if it came down to that because you have to have a situation where the remedy would need to remedy something that seriously affected the fairness, integrity, or public perception of judicial proceedings. And when a defendant looks at something this closely and asks for this sentence and receives the sentence he's asked for with a fair process like we've received here and he gets what he's received, there's no need to correct. Even if you find something that meets those other requirements, there's no need for a correction here under that fourth prong. Of course I can go on. What about the warrantless search provision? The warrantless search condition I think is appropriate for two reasons. One is that the statute explicitly How long does it last? It lasts for the 30-year period unless the court changes it, which the court always has the prerogative to modify the condition. But the statute, 3583D, explicitly endorses a warrantless search condition, suspicionless when you're talking about the probation officer, as you are here, because it requires the probation officer's participation in every search, in any case where the person is a felon and required to register as a sex offender. And that's what he has here. There's no requirement that you go through the other three factors for any condition because the statute explicitly permits it for any sex offender who's a felon. But even if this court didn't look at that, it meets the requirements because it's reasonably related to the factors, which are especially the protection of the public. As the court said, it's very difficult to detect crime. He was searching for ways to hide his IP address. And something he emphasized was this was something he did in his own home. It's not something that's easy to detect. And it's not just detection. It's also deterrence that this condition affects. Because if a defendant thinks he's not producing any evidence that his probation officer is going to know about, he might do something. But if he knows he can be searched any time without suspicion, without a warrant, then he's a lot less likely to engage in this same kind of behavior. So I think it's no more restrictive than reasonably necessary in this case, reasonably related to the factors, and it's consistent with the commission's statement. I will note, because I think this is an important point, nothing in the sentencing guidelines restricts the kind of conditions you can impose. So a condition can be consistent with those guidelines, even if it doesn't match a condition in the guidelines, in the policy statement. But even if you did have to have a match, this kind of search condition, not in the exact same language but very similar, is one that the policy statement endorses for sex offenders like Mr. Olson. I'm happy to address the other issues, and I'm happy to answer any questions about them. But if this Court has no further questions, I will rest on my briefs. Thank you very much, sir. Thank you, Your Honor. Appreciate it. Mr. Barn? Just a couple things briefly, Your Honor. And I'll pick up on where my comrade there left off, which is the search condition. It's not consistent with the statute or the guidelines because they require that the probation officer, before engaging in a search, have reasonable suspicion of a violation of the condition of supervised release. And the condition that was imposed in this case does not. It absolutely allows a probation officer to, on a hunch, on a whim, on anything, to search Mr. Olson's person, his home, his effects, the home of someone else, where he happens to be. I disagree, as a matter of grammar, with the way that the government reads 3583D. The government reads it to say, by any law enforcement or probation officer with reasonable suspicion and by any probation officer in the lawful discharge of their functions. Right? That one requires reasonable suspicion and then the second does not. You, I take it, disagree, as a matter of grammar, with how they read that. Yes, Your Honor. I think that the... Explain that to me. I think the condition that's laid out in the statute and in the guidelines has the reasonable suspicion provision there in order to provide some boundary. Well, it says a search at any time, with or without a warrant, by any law enforcement officer with reasonable suspicion and by any probation officer in the lawful discharge of their duties. So just the way I've been taught to read is to separate those at the and. Right? One is by certain people with reasonable suspicion and one is by a probation officer in the lawful discharge of their duties. I read those by's as two separate groups. How should I read it to import reasonable suspicion into that second clause? The way I read that is that reasonable suspicion is a condition precedent to a search and then the probation officer also has to be doing it in the... What do I want to say? In the lawful execution of their duties. Well, no, because probation officer is mentioned twice. Once it's any law enforcement or probation officer with reasonable suspicion and then next, and by any probation officer in the lawful discharge of their duties. So those are separated in the statute. They are, but I think they have to be read together because if the second section is to be read the way the government reads it, then the first section with the reasonable suspicion limitation is meaningless. It's superfluous because the probation officer can do whatever they want in the execution of their duties. The probation officer whose duty it is to supervise this particular individual can come and search any time without suspicion or warrant, but other law enforcement or probation officers have to have reasonable suspicion. That's not the way I read it, Your Honor. So you think reasonable suspicion and lawful discharge of the duties, those apply together. That's all one requirement for probation officers. Yes, Your Honor. Does the lawful discharge of their duties apply to law enforcement in that clause? If I'm mushing these two clauses together, I just want to make sure I'm applying them to the right nouns. That's a good question, Your Honor. Honestly, I'm not certain. I'll admit that. That's all right. I see my time is up. Thank you very much, Your Honors. Mr. Byrne, we appreciate y'all's work. Thank you very much for helping us out with this case. You're very welcome. Appreciate your argument and yours, Mr. Enright. We'll come down and recounsel, and then we'll call the next case.
judges: Robert B. King, Stephanie D. Thacker, Allison J. Rushing